**DELTA SIGMA THETA SORORITY, INC., Plaintiff,**

**v.**

**ALLEN PROFESSIONAL GRAPHICS GROUP, LLC, d/b/a X; Zeus' Closet; and Fratbrat, Ethan K. Allen,**

and

**Monica Allen, Defendants.**

**Case No. 14–1403**

United States District Court, District of Columbia.

Signed 9/30/2014

Filed 10/01/2014

Sharmian L. White, Devarieste Curry, McLeod, Watkinson & Miller, Washington, DC, for Plaintiff.

Anuj Desai, Arnall Golden Gregory LLP, Atlanta, GA, Montserrat Carmen

Miller, Arnall Golden Gregory, LLP, Washington, DC, for Defendant.

**JURY TRIAL DEMANDED
INJUNCTIVE RELIEF
SOUGHT**

**PRELIMINARY INJUNCTION ORDER**

Royce C. Lamberth, United States District Judge

This matter comes before the Court on Plaintiff Delta Sigma Theta Sorority, Incorporated's Application for a Preliminary Injunction ("Application"), filed on August 15, 2014. Plaintiff seeks a preliminary injunction to enjoin Defendants Allen Professional Graphics Group ("APGG"), and APGG co-owners Ethan K. Allen and Monica Allen from infringing Plaintiff's trademarks and service marks (hereinafter "Marks"), and taking other actions that would frustrate Plaintiff's ability to pursue relief in this matter. The Court has considered the Application and, on the basis of the parties' respective filings; the arguments presented to the Court, [ [*if applicable*] ]; and the entire record herein, the Court hereby finds that the Application should be **GRANTED.**

**IT IS HEREBY ORDERED** that Defendants APGG, Mr. Allen, and Ms. Allen ("Defendants") are, during the pendency of this action, restrained, enjoined, and prohibited from engaging in the acts and conduct set forth hereinafter in detail.

**Findings of Fact**

1. Plaintiff Delta is a not-for-profit membership service organization that was founded in 1913 on the campus of Howard University and is incorporated under the laws of the District of Columbia.

2. The Plaintiff asserts that it owns a number of trademarks and service marks ("Marks") and has registered many of its Marks with the United States Patent and Trademark Office ("PTO"), as shown on Schedule A, attached to this Order. The Plaintiff asserts that it has various common law trademark rights regarding several other Marks, as shown on Schedule B, accompanying this Order.

3. Defendant APGG is a Georgia limited liability company with its principal address at 1339 Marietta Blvd., Suite C, Atlanta, GA 30318.

4. Defendant Ethan K. Allen is an individual residing in the state of Georgia. His address is 2760 Glenlocke Circle, N.W., Atlanta, GA 30318. Mr. Allen is co-owner and Chief Executive Officer ("CEO") of APGG, and at all times relevant to this litigation, has been a managing member of APGG. At all times relevant to this litigation, Mr. Allen has apparently directed, controlled, and been a moving force behind the acts of APGG.

5. Defendant Monica Allen is an individual residing in the state of Georgia at 2760 Glenlocke Circle, N.W., Atlanta, GA 30318. Ms. Allen is co-owner, Chief Financial Officer ("CFO"), and Secretary of APGG, and at all times relevant to this litigation, has been a managing member of APGG. At all times relevant to this litigation, Ms. Allen has apparently directed, controlled, and been a moving force behind, the acts of APGG.

6. Plaintiff has alleged in its complaint and has submitted evidence that (1) Plaintiff issued APGG a vendors license allowing it to manufacture and market merchandise bearing Delta's Marks under restrictions set forth in a License Agreement issued by Plaintiff effective February 1, 2012; (2) Mr. Allen signed the License Agreement on behalf of APGG; and (3) Ms. Allen, given her status and roles related to APGG, and her apparent obligations under the License Agreement, has at all relevant times been so closely related to the contractual relationship that it was foreseeable that she would be

bound by the License Agreement along with Mr. Allen and APGG.

7. Plaintiff has alleged and has submitted evidence that Defendants breached the License Agreement by not complying with it, and that Plaintiff terminated Defendants' license to use Plaintiff's Marks due to Defendants' noncompliance with the terms of the License Agreement on November 8, 2012.

8. Plaintiff has alleged and has submitted evidence that pursuant to the terms of the License Agreement, Defendants were required to cease using Delta's Marks upon termination of the License Agreement for any reason, and that Defendants were required, pursuant to the License Agreement and the Notice of Termination of the Agreement, to send any inventory of merchandise bearing Plaintiff's Marks to Plaintiff. Plaintiff has alleged that Defendants have breached these termination provisions of the License Agreement by continuing to market merchandise bearing Plaintiff's Marks, including online, and by failing to send inventory bearing Plaintiff's Marks to Plaintiff.

9. Plaintiff has alleged and has submitted evidence that the Defendants have sold and are selling merchandise, including jackets, shirts, sweaters, sweatshirts, infant and youth apparel, various accessories, patches, gifts and other merchandise that bear Delta's Marks or confusingly similar imitations thereof. Plaintiff has alleged and submitted evidence that Defendants advertise and place such merchandise in interstate commerce via their retail store, Zeus's Closet, located at 1339 Marietta Blvd., N.W., Suite B, Atlanta, GA 30318, and online via their websites including:

http://www.apgg.net;
http://www.s4g.com;
http://www.stuff4greeks.com;
http://www.fratbrat.com;
http://www.zeuscloset.com

10. Plaintiff has alleged and has submitted evidence that Defendants also have advertised and currently advertise their Zeus' Closet store and their various brands and websites and the merchandise sold via these means on various social media sites, including Facebook, Instagram, Pinterest, and Twitter, at:

http://ethanking.com/services/clothing-design/
www.facebook.com/stuff4greeks;
www.facebook.com/fratbrat;
www.facebook.com/zeuscloset;
www.instagram.com/stuff4greeks;
www.instagram.com/zeuscloset;
www.pinterest.com/stuff4greeks;
www.twitter.com/zeuscloset;
www.twitter.com/stuff4greeks;
www.twitter.com/fratbrat.

11. Plaintiff has alleged and has submitted evidence that Defendants are holding themselves out as licensed vendors and are advertising their merchandise as "official licensed product."

12. The Court has taken notice that (1) the www.stuff4greeks.com website claims that Stuff4Greeks is a "licensed vendor[ ] of Delta Sigma Theta Sorority, Inc.," and (2) the bottom of most webpages on the www.stuff4greeks.com website, including those webpages offering merchandise the site expressly purports to associate with "Delta Sigma Theta Sorority, Inc.," depict a round insignia with Greek letters and the phrase "Official Licensed Product."

### Conclusions of Law

1. The Court is satisfied that it has personal jurisdiction over the Defendants, and that venue is appropriate in the District of Columbia, because the License Agreement at issue includes a forum selection clause which provides, in pertinent part:

This Agreement and the parties' rights and obligations hereunder shall be construed and interpreted in accordance with the laws of the District of Columbia and applicable federal law. The parties agree to bring any action or proceeding relating to this Agreement, its interpretation, performance or breach, and/or the parties' respective rights and obligations relating to it . . . in the federal or local courts in the District of Columbia and in no other forum. In any such action or proceeding brought against LICENSEE in a District of Columbia Court, LICENSEE expressly submits to and waives any objection to personal jurisdiction and venue.

License Agreement at § 18. The forum selection clause binds APGG as licensee; Mr. Allen as co-owner and CEO of APGG and signatory of the License Agreement on behalf of APGG; and Ms. Allen as CFO, Secretary, and an individual so closely related to the contractual relationship that it was at all relevant times foreseeable that she would be bound by the Agreement. *See, e.g., Sabre Int'l Security v. Torres Advanced Enter. Solutions, LLC,* 2014 WL 1378771, 2014 U.S. Dist. LEXIS 81349 (D.D.C. 2014) (denying non-signatories' motions to dismiss for lack of personal jurisdiction and upholding forum selection clause); *Kotan v. Pizza Outlet, Inc.,* 400 F.Supp.2d 44 (D.D.C. 2005) (finding forum selection clause to bind non-signatory entity opposing transfer of case to different venue).

2. A moving party must establish the following four factors in order to be entitled to a preliminary injunction under Federal Rule of Civil Procedure 65:

> (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3) other interested parties will not suffer substantial harm if the injunction is granted; and (4) the public interest will be furthered by the injunction.

*Foundation of Econ. Trends v. Heckler,* 756 F.2d 143, 151 (D.C. Cir. 1985); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977). The Plaintiff has met these four factors and is entitled to a preliminary injunction at this time.

3. The Plaintiff's asserted claims as to all Defendants are for breach of contract under District of Columbia law and trademark infringement; false designation/unfair competition; trademark counterfeiting, and trademark dilution, arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* The Plaintiff has also asserted claims as to Ms. Allen for contributory trademark infringement, contributory false designation/unfair competition; contributory trademark counterfeiting; and contributory trademark dilution.

4. The Plaintiff has the exclusive right to use its Marks and to license others to use its Marks.

5. The Defendants are not licensed to use Plaintiff's Marks.

6. This Court finds that the Plaintiff is likely to prevail on the merits of its breach of contract claim.

7. This Court finds that the Defendants agreed under the License Agreement that any unauthorized use of Plaintiff's Marks, which is one of the breaches alleged by Plaintiff, would result in injury to Plaintiff and associated damages, and would entitle Plaintiff to injunctive relief. Section 8 of the Agreement ("Equitable Relief") provides:

> Licensee acknowledges and agrees that any unauthorized use by it of any Delta Mark will cause irreparable harm and significant injury to Delta; that damages from such harm or injury would be difficult to determine on a prompt basis; and that Delta shall be entitled to immediate equitable relief from such unautho-

rized use, by way of temporary and/or permanent injunction, in addition to other rights and remedies that Delta may have.

License Agreement at 4, § 8.

8. This Court finds that the Plaintiff is likely to prevail on the merits of its trademark infringement, trademark counterfeiting, and unfair competition claims, understanding that a likelihood of success on those claims, coupled with satisfaction of the other required elements, entitles the Plaintiff to injunctive relief.

9. This Court has repeatedly recognized that trademark infringement and unfair competition are offenses that, by their very nature, cause irreparable injury. *See, e.g., Partido Revolucionario Dominicano (PRD) Seccional Metropolitana de Washington DC, Maryland y Virginia v. Partido Revolucionario Dominicano, Seccional de Maryland y Virginia,* 312 F.Supp.2d 1, 32 (D.D.C. 2004); *Appleseed Found., Inc. v. Appleseed Inst., Inc.,* 981 F.Supp. 672, 677 (D.D.C. 1997); *Malarkey–Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.,* 929 F.Supp. 473, 478 (D.D.C. 1996); *Sears, Roebuck & Co. v. Sears Fin. Network, Inc.,* 576 F.Supp. 857, 864 (D.D.C. 1983) (addressing trademark infringement, unfair competition, and trademark dilution). *Accord Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000) ("irreparable harm is generally presumed in cases of trademark infringement and dilution"); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 640 (1st Cir. 1992) ("By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated.").

10. Because the Plaintiff has established a likelihood of success on each of its claims, it has necessarily established, under prevailing law, that it will suffer certain irreparable harm in the absence of relief provided by this order.

■ 11. Defendants will not suffer substantial harm from this preliminary injunction. Defendants' conduct has likely been intentional and motivated by profit, resulting in irreparable damages to Plaintiff's licensed products, reputation and goodwill as a longstanding not-for-profit member service organization. Defendants will be able to continue operating their business, as Plaintiff does not seek to enjoin all sales of Defendants' products, but only to halt sales of merchandise using Plaintiff's Marks. Moreover, any harm that Defendants might claim is mitigated by the fact that they are not authorized to use Plaintiff's Marks. This Court has noted that "[t]he balance of harms cannot favor a defendant whose injury results from the knowing infringement on the plaintiff's trademark." *Malarkey–Taylor,* 929 F.Supp. at 478.

■ 12. Granting a preliminary injunction will further the public interest. It is within the public interest for the Court to take action to prevent public deception and confusion over the source or origin of goods. *See Sears,* 576 F.Supp. at 865; *Crime Control, Inc. v. Crime Control, Inc.,* 624 F.Supp. 579, 582 (D.D.C. 1984)("The public has a right not to be deceived or confused."). This is particularly true where the preliminary injunction will not stop Defendants from marketing all products, but will only require that they stop using Plaintiff's Marks. *See Malarkey–Taylor,* 929 F.Supp. at 478. Therefore, this Court finds it in the public's best interest to avoid further confusion.

**WHEREFORE,** based upon the foregoing and based upon its conclusion that the record of evidence and the relevant law are sufficiently clear, **THIS COURT HEREBY GRANTS** the Plaintiff's appli-

cation for preliminary injunction against defendants APGG, Ethan K. Allen, and Monica Allen (including each of their agents, officers, employees, representatives, successors, assigns, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with them, in accordance with Federal Rule of Civil Procedure 65).

Defendants are hereby **RESTRAINED, ENJOINED AND PROHIBITED FROM:**

1. Manufacturing, distributing, marketing, advertising, promoting, transporting, disposing of, donating, or offering for sale, or otherwise distributing any merchandise that uses any of the Plaintiff's registered or unregistered Marks as shown on Schedules A and B attached hereto, or any mark that is confusingly similar to Delta's Marks.

2. Hosting, acting as Internet Service Provider for, operating, or using any website to advertise, offer for sale, or sell any products bearing Plaintiff's registered or unregistered Marks, or linking any website or web content to any such website.

3. Using any email address to offer for sale or sell any merchandise bearing Plaintiff's registered or unregistered trademarks.

4. Falsely stating or implying Plaintiff's endorsement, support, or approval of Defendants' merchandise or engaging in any act or series of acts which, either alone or in combination, constitute unfair methods of competition with Plaintiff, and from otherwise interfering with or injuring Plaintiff's Marks or the goodwill associated therewith;

5. Engaging in any act which is likely to dilute the distinctive quality of Plaintiff's Marks and/or injure Plaintiff's reputation and goodwill;

6. Representing or implying that Defendants are in any way sponsored by or affiliated with, or currently endorsed, approved or licensed by Plaintiff;

7. Secreting, destroying, altering, removing, or otherwise dealing with merchandise bearing Delta's trademarks, or any books or records of any type that contain any information relating to the manufacturing, producing, importing, exporting, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of merchandise that infringes upon Delta's Marks.

8. Effecting assignments or transfers, forming new entities or associations, or using any other entities or associations, or any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this order.

9. Selling or transferring ownership or control over APGG or any of the websites associated with APGG or its brands to any third party.

10. Assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 1 through 9 above.

11. In addition to the foregoing relief, defendants are **ORDERED** to remove, within 72 hours of the issuance of this Order, all content depicting any of Plaintiff's registered or unregistered Marks, or any mark that is confusingly similar to any of Delta's Marks from the various websites, including social media sites listed above, and any other website over which they exercise control or direction.

12. Defendants are **ORDERED** to provide a copy of this Order to each of their agents, officers, employees, representatives, successors, assigns, and all other persons acting for, with, by, through or under Defendants' authority, or in concert or participation with them with respect to the issues involved in this litigation and/or the activities of Defendants.

This Court concludes that after considering all of the Federal Rule of Civil Procedure 65(c) factors, Delta shall be required to post a bond or cash ` in the amount of [[$5,000]].

This preliminary injunction shall last throughout the pendency of this litigation, or until this Court sooner orders otherwise.

**SO ORDERED.**